Exhibit #30

EXHIBIT
ARog
EX 30

**BERT SILVER**
**BERT SILVER**
11705 DEVILWOOD COURT
POTOMAC, MARYLAND 20854
(301) 424-5213

October 7, 1997

Ms. Romello Arnold
2107 Wagon Trail Place
Silver Spring, MD 20906

Dear Ms. Arnold:

Enclosed is an affidavit which I prepared dealing with the complaint of discrimination of Mr. Richard Masterson against the U.S. Department of the Interior. The affidavit is based on the information you gave me in an interview this afternoon.

Please review the affidavit carefully. Minor changes may be made, and initialed in black ink, but please do not write in the left hand margins where the document will be bound in the report. Major changes may be made on additional pages, which also should be initialed. You may rewrite the affidavit in its entirety if you so wish, but if you do that you must deal with the same material and keep my "boilerplate", consisting of the first line, the certification and what follows.

You should initial and date the affidavit on the lines at the bottom of each page. After you are satisfied that the affidavit is correct and complete, please call me so that we may make arrangements for me to witness your signature and pick up the affidavit. I would appreciate it if we could do this as soon as possible after you return from your vacation.

If you have any questions please call me. Thank you for your cooperation.

Sincerely yours,

Bert Silver
EEO Complaints Investigator

Enclosure

AFFIDAVIT

DISTRICT OF COLUMBIA

I, Romella Arnold, a GS-12, EEO Specialist in the Office of Equal Opportunity, Bureau of Land Management, U.S. Department of the Interior (DOI), hereby solemnly swear:

I am submitting this affidavit in response to questions by Investigator Bert Silver to answer the complaint of discrimination by Richard Masterson. I understand the specific charges made against the Department of the Interior. I have been informed that I have the right to representation. For the record I am an African American female born in the U.S. on May 9, 1962. I am not of Irish descent.

    1. I was a co-worker of Mr. Richard Masterson when I was an Equal Opportunity Specialist in the Complaints Processing Unit (CPU) of the Interior Service Center (ISC), where I worked from November 1995 until April 1997. In the CPU, I handled dismissals and acceptances of complaints; I wrote FAD's only on dismissals but not on the merits.

    2. I worked in the CPU after I retreated to a job there as a result of a bogus RIF run in the Office of the Secretary (O/S). They had put out a memo saying that they were running a RIF to get rid of surplus positions. The RIF was bogus because after they RIFFED people, they hired other people to fill the jobs. For example, they abolished the entire Personnel Branch and then put out vacancy announcements to hire personnel specialists for the same jobs they had previously said were no longer needed. The RIF

Initials _RA_ Date _10-28-97_ Page 1 of 5 pages

adversely affected African American employees; it also targeted older White males who were eligible for retirement, a lot of them took the offered buy-out and retired.

4. When a notice was issued saying that they were planning another RIF in ISC, representatives of the National Association for the Advancement of Black Federal Employees, including myself, went to see the Deputy Secretary and protested. They had issued a list of 32 positions to be affected by the RIF of which 21 were filled by African Americans. We told the Deputy Secretary that the first RIF had adversely affected African Americans and that we were not going to let them do it a second time. I showed him a list of 7 White people who had been hired in GS-13, 14, and 15 positions following the first RIF. As a result of our protest, the RIF was cancelled.

5. When the CPU was established, Mr. Masterson was put in a situation where there was an accumulated backlog of FAD's which had to be written. The only persons qualified to write FAD's were Mr. Masterson and Mr. Charter Wells (White). In March 1996, two Black males, Mr. Henry Harper and Mr. Robert Jackson, were promoted to GS-13 and were then supposed to write FAD's on the merits. However, Mr. Jackson was taken off writing FAD's because he could not do them. It was felt that he did not have the necessary analytical skills.

6. When they established the CPU they knew that unit was going to be abolished. Mr. Masterson and Mr. Wells, each of whom had previously been working in Policy were placed in the CPU. In contrast, Mr. Jackson and Mr. Harper, who had never in their

Initials RJH Date 10-26-97 Page 2 of 5 pages

careers worked in Policy, were put in Policy after the reorganization. With the exception of myself, who had not worked for Ms. Melodee Stith previously, every professional who was placed in the CPU had filed previous EEO complaints against Ms. Stith.

7. In staff meetings I questioned why GS-14's were placed in CPU to process complaints instead of being placed in Policy. I never got an intelligent answer from Ms. Teiko Saito or Ms. Claudia Schechter. Writing FAD's on the merits is supposed to be policy work, yet Mr. Masterson, Mr. Wells and Ms. Melinda Hayden, a GS-12, all of whom were placed in the CPU, were told to write FAD's. Ms. Hayden was the only GS-12 required to write FAD's; even though she was not supposed to do that work at her grade level, they gave her a bad performance rating because of it.

8. All of us who were placed in CPU were put in a situation where management knew we were going to fail. Setting up CPU was management's solution for re-inventing government. I contend that in splitting up operations and policy Ms. Stith seized the opportunity to get rid of employees whom she did not want, especially employees who had filed complaints against her. Deciding what was operations and what was policy was a manager's call. Ms. Stith could have kept her office intact as a policy office.

9. Ms. Saito was put in charge of CPU on detail, but in reality Ms. Stith still ran the office. Ms. Saito had been her special assistant and she never severed those ties with Ms. Stith.

Initials _____ Date 10-28-99 Page 3 of 5 pages

Ms. Saito did not have a clue about what we were doing or how we could do things better. Ms. Stith was still making the decisions.

10. Mr. Masterson was faced with an impossible task. They assigned him work which a miracle worker could not have done. They gave him an unsatisfactory performance appraisal prior to the reorganization and put him on a Performance Improvement Plan (PIP). When he sought other jobs he could not apply because he did not have a performance evaluation.

11. I heard that Mr. Harper's FAD's got signed off on pretty easily. I also heard that he prepared FAD's which mainly found no discrimination. Only when there is a finding of discrimination is it necessary to support it in the FAD through analysis. Perhaps Mr. Masterson got the more complicated cases. I knew that his were not signed off on as easily as Mr. Harper's were.

12. Because we did not have an automated complaints processing system in place, we spent many days trying to develop one. Management thought it had one, but it never worked. This caused dissension among the employees. For example, I had to get into a memo writing ~~war~~ with Mr. Wells, the intake manager, who accused me of having complaints which I did not have and which I never had. Eventually, Ms. Saito had to get involved, and as a team we developed a new automated tracking system.

## CERTIFICATION

I have read the attached affidavit consisting of 4 pages, and it is true and complete to the best of my knowledge and belief. In making this affidavit, I understand Section 1001, Title 18 of the U.S. Code which states:

> Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick,

Initials _KM_ Date _10-28-97_ Page 4 of 5 pages

scheme, or device a material fact, or makes false, fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than 5 years, or both.

The collection of this information is authorized by Public Law 92-261, Equal Employment Act of 1972; and Executive Order 11478 as amended. This information will be used to adjudicate complaints of alleged discrimination. As a routine use, this information may be disclosed to persons involved in the processing and/or adjudication of this complaint; to the Equal Employment Opportunity Commission or to the Merit Systems Protection Board, as appropriate, to adjudicate complaints of alleged discrimination; to a court, party or counsel for a party in judicial or administrative litigation; to a congressional office at your request; to a labor organization as may be required by the NLRA. Provision of the information requested is mandatory for the complainant, U.S. Department of the Interior employees and other federal employee witnesses. Failure of U.S. Department of the Interior or other federal employees to provide the requested information could result in disciplinary action.

I declare under penalty of perjury that the foregoing is true and correct.

_Romella J. Arnold_
(Romellq Arnold--signature)

_Romella Arnold_
(printed or typed name)

_10-28-97_
(date)

Subscribed and sworn to before me at _Washington, DC_ on this _28th_ day of _Oct_ 1997.

_[signature]_
(Investigator's signature)

_Washington, D.C._
(city, state)

Initials____Date_____Page 5 of 5 pages

AFFIDAVIT

DISTRICT OF COLUMBIA

I, Romella Arnold, a GM-13, Program Manager in the Office for Equal Opportunity, Bureau of Land Management, U.S. Department of the Interior (DOI), hereby solemnly swear:

I am submitting this affidavit in response to questions by Investigator Bert Silver to answer the complaint of discrimination by Gerrie Moore against the Department of the Interior. I understand the specific charges made against the Department of the Interior. I have been informed that I have the right to representation. For the record, I am an African American, my color is black and my date of birth is May 9, 1952.

1. I served as vice president of the National Association for the Advancement of Black Federal Employees (NAABFE) of DOI and in that capacity attended a series of meetings with Mr. John Berry, Assistant Secretary for Policy, Management and Budget to discuss issues that impact African Americans in DOI, among which was the process used in selecting candidates for the Senior Executive Service Candidate Development Program (SESCDP) #9. Mr. David Montoya, the Deputy Director for Diversity, who works for Mr. Berry, also attended the meetings the first of which took place sometime in 1997, but I don't remember the date.

2. We asked Mr. Berry how the department would monitor selections made for SESCDP #9 to make sure there would be a diverse pool of candidates selected. We were told that the program would be centralized at the departmental headquarters level. We were also told that the announcement would be sent to a wide audience and if the

Initials _____ Date _____ Page 1 of 3 pages

applicant pool was not diverse enough the program would be re-announced. At a subsequent meeting Mr. Berry told us that he had received a list of eligible candidates but since it was not diverse enough he had sent it back to the Executive Review Board. KJA

Following that we heard nothing and the program appeared dormant. We were not informed whether or not the program had continued on a centralized level and I did not hear from other sources any allegation that it had been turned back to the bureaus.

3. Last spring, the ABFE representatives and representatives of other groups of KJA DOI employees of various cultural and racial backgrounds again met with Mr. Berry and Mr. Montoya. Mr. Montoya told us that selections had been made and the candidates for SESCDP #9 included one African American, one Native American, one Hispanic and one member of another minority group. We told them that selecting one from each group was tokenism.

4. Later on we met with Mr. Berry again to discuss ways to improve the program for SESCDP #10. One suggestion we made was that the candidates who had been selected for class #8, when Ms. Bonnie Cohen was the Assistant Secretary, be made eligible for class #10. Class #8 had included the largest number of minority candidates ever, but after candidates had been selected the class was cancelled.

## CERTIFICATION

I have read the above affidavit, consisting of 2 pages, and it is true and complete to the best of my knowledge and belief. I understand Section 1001, Title 18 of the U.S. Code which states:

> Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and will fully falsifies, conceals or covers up by any trick, scheme, or device, a material fact, or makes false, fictitious or fraudulent statements or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry,

Initials _____ Date _____ Page 2 of 3 pages

shall be fined not more than $10,000 or imprisoned not more than 5 years, or both.

The collection of this information is authorized by Public law 92-261, Equal Employment Act of 1972; and Executive Order 11478, as amended. This information will be used to adjudicate complaints of alleged discrimination. As a routine use, this information may be disclosed to persons involved in the processing and/or adjudication of this complaint; to the Equal Employment Opportunity Commission or to the Merit Systems Protection Board, as appropriate, to adjudicate complaints of alleged discrimination; to a court, party or counsel for a party in judicial or administrative litigation; to a congressional office at your request; to a labor organization as may be required by the NLRA. Provision of the information requested is mandatory for the complainant, U.S. Department of the Interior employees and other federal employee witnesses. Failure of U.S. Department of the Interior or other federal employees to provide the requested information could result in disciplinary action.

I declare under penalty of perjury that the foregoing is true and correct.

_____
(Signature)
Rolfe Pitts

Sworn to by telephone on the 22nd day of December 1998, and received by mail on this ___ day of _____, ___

_____1-2-99_____
(Date)

_Silver Spring, MD - 20906_
(City, state)

_____
(Signature – Bert Silver)

Initials____Date____Page 3 of 3 pages