FORM DI-1892  
REV. 12/98

U.S. DEPARTMENT OF THE INTERIOR  
COMPLAINT OF DISCRIMINATION

1. COMPLAINANT'S NAME: Romella Arnold   PLACE OF EMPLOYMENT: Dept. of the Interior
STREET ADDRESS: 1849 C. Street, NW   ADDRESS: _____
CITY, STATE, ZIP CODE: Washington DC   CITY, STATE, ZIP CODE: 20240
SOCIAL SECURITY NUMBER: [redacted]   WORK PHONE: (202) 208-2443
HOME PHONE: [redacted]

2. DOI OFFICE WHICH YOU BELIEVE DISCRIMINATED AGAINST YOU?
BUREAU: Bureau of Land Mgt.   DIVISION/OFFICE: Human Resource Management
ADDRESS: 1849 C. Street, N.W   REGION: Washington Headquarters
CITY/STATE: Wash. D.C.

3. BASIS(ES) FOR BELIEVING YOU WERE DISCRIMINATED AGAINST? (CHECK ONE OR MORE, AND PROVIDE THE SPECIFIC INFORMATION)

___ RACE _____
___ COLOR _____
___ RELIGION _____
___ NATIONAL ORIGIN _____
✓ SEX _____
✓ REPRISAL _____
✓ Hostile work environment/harassment and continuing

✓ AGE (DATE OF BIRTH) 5-9-52
___ PHYSICAL HANDICAP _____
___ MENTAL HANDICAP _____
___ SEXUAL ORIENTATION _____
(If filing on this basis please use Addendum B for procedural rights)
(DATE OF PREVIOUS EEO ACTIVITY) Sept. 1997

4. ALLEGATION(S) OF DISCRIMINATION? (FOR EACH ALLEGATION, STATE THE DATE AND THE SPECIFIC INCIDENT CAUSING YOU TO BELIEVE THAT YOU HAVE BEEN DISCRIMINATED AGAINST. FOR EXAMPLE: I WAS DISCRIMINATED AGAINST ON JANUARY 1, 1992 WHEN I WAS NOT SELECTED FOR THE POSITION OF ANALYST (USE ADDITIONAL PAGES AS NECESSARY)

See attachment

5. HAVE YOU DISCUSSED YOUR CLAIMANT WITH AN EEO COUNSELOR? YES ✓ NO ___
IF YES, NAME OF COUNSELOR: Ms. Sharon Salpini
DATE YOU FIRST CONTACTED THE COUNSELOR: August 6, 2003
DATE YOU RECEIVED THE NOTICE OF FINAL INTERVIEW AND RIGHT TO FILE A COMPLAINT LETTER FROM THE COUNSELOR: Sept. 2, 2003

6. ARE YOU AGREEABLE TO USING THE ALTERNATIVE DISPUTE RESOLUTION (ADR) PROCESS?
YES ✓   NO ___

Docket #: LLM-04-002
Complaint Date OCT 17 2003

EXHIBIT Blue

EXHIBIT Exhibit A

October 15, 2003

Equal Employment Opportunity Officer
U.S. Geological Survey
12201 Sunrise Valley Drive MS 602
Reston, Va. 20192

Re: Formal Complaint of Discrimination

Pursuant to the Notice of Final Interview received on October 7, 2003, this formal complaint of discrimination against the Bureau of Land Management is submitted on behalf of our client, Ms. Romella Arnold, hereafter referred to as Complainant. Complainant alleges that she has been the victim of a continuing pattern of discrimination based on age, gender, reprisal, harassment, and a hostile work environment.

These actions by Ms. Marilyn Johnson have caused Complainant severe stress, anxiety, emotional distress and depression. Due to the symptoms of her depression, sleeplessness, difficulty concentrating, isolation from family members and friends, and loss of enjoyment, Complainant has been under the care of a therapist. In addition, these actions exacerbated the stress induced skin condition Complainant has suffered from during these incidents. Complainant has also been under the care of a dermatologist and internist. The issues are:

1. Whether Complainant was discriminated against based on age, gender, reprisal, harassment, and hostile work environment when Ms. Marilyn Johnson, Associate Director, Human Resource Management (AD/HRM) for the Bureau of Land Management (BLM) accused Complainant of engaging in criminal activity, specifically "money laundering", on five separate occasions.

Complainant was employed as the Student Employment Program Manager for the BLM in 1998, and absorbed the duties and responsibilities of the HBCU Team Leader position in 2001. In September 2002 Ms. Marilyn Johnson, then acting AD/HRM for approximately one month, confronted Complainant in a hallway, and accused her of "laundering money to Langston University". Complainant was shocked by this accusation and requested a meeting with Ms. Johnson to clarify her role vis a vis Langston University. This meeting took place about a week later, and Ms. Johnson repeated the allegation that Complainant had laundered money to Langston University in the presence of Complainant's supervisor Ms. Connie Stewart, the then Deputy Associate Director for Human Resource Management and Ms. Sylvia Felder, a budget assistant. Complainant, shocked and humiliated by Ms. Johnson's remark, explained that the grant received by Langston University had been approved by the BLM under the HBCU partnership initiative. Complainant had acted within the scope of her official position description when she had recommended to Mr. Warren Johnson, the prior AD/HRM, that Langston be considered for this partnership grant, (see Attachment A). It was Mr. Johnson in conjunction with BLM managers and procurement and budget personnel that had the authority to approve this recommendation, and did so.

1

On July 18, 2003 during a meeting between Ms. Johnson and Complainant Ms. Johnson again accused Complainant of laundering money to Langston University. Once more, Complainant attempted to clarify her role in the HBCU grant process, and asked Ms. Johnson to stop referring to this legitimate program initiative as money laundering. Ms. Johnson responded with a half-hearted apology at that time. However, Complainant was told by Mr. Steve Shafran that Ms. Johnson again made reference to the partnership with Langston as money laundering during a program managers meeting on August 12, 2003.

At an attempted mediation of Complainant's EEO action on these matters on October 2, 2003, Ms. Johnson stated, "I'm guilty of using the term money laundering." Ms. Johnson added that she was still concerned about the grant issued to Langston University. This was stated in the presence of the mediator, Mr. John Wagner, Ms. Patricia Armstrong, agency attorney, Complainant, and Complainant's representative Ms. Sandra McCrary.

Money laundering is a federal crime, and for Complainant to be accused of this crime by a senior level manager in the presence of Complainant's supervisor and peers is both demeaning and defamatory. Complainant has an unblemished record of over thirty years of federal service. Complainant is the recipient of numerous commendations and awards for her outstanding program leadership. Complainant's program was specifically cited in the February 2003 government wide report by The Performance Institute, which stated, "Another robust recruitment initiative worthy of coverage is the Bureau of Land Management's (BLM) Student Educational Employment Program" (see Attachment B).

Complainant's reputation as an advocate for equal employment opportunity and vocal opponent of discrimination is well known within the BLM and the Department of the Interior. Complainant believes Ms. Johnson made this false accusation against her in reprisal for Complainant's active involvement in BLM EEO initiatives. Complainant avers that Ms. Johnson's repeated accusations of money laundering have damaged Complainant's reputation, self-esteem and career opportunities. Complainant bases this belief, in part, on the fact that subsequent to making these allegations Ms. Johnson reassigned Complainant from her position as Student Employment Program Manager/HBCU Team Leader creating the unjust perception that Complainant was removed from her position because of some wrongdoing on Complainant's part.

2. Whether Complainant was discriminated against based on age, gender, harassment, reprisal and hostile work environment when Ms. Johnson dismantled the Student Employment /HBCU Monitoring and Tracking System, known as the SERTS system, and subsequently imposed unreasonable time frames for data based reports on Complainant.

On January 22, 2003, Ms. Johnson instructed a subordinate to delete the Student Enhancement Recruitment Tracking System (SERTS) from the AD/HRM information system. The SERTS system had been developed because of a finding by a Departmental Task Force (report issued in December 1995 at the behest of Congressman Albert Wynn),

2

that BLM had no effective mechanism in place to monitor and track EEO performance to include the hires and retention of HBCU graduates. The SERTS system cost approximately $100,000 to develop and was the only automated data source available to Complainant for information on her program areas. Absent the SERTS system, Complainant had to manually gather all program data by calling each individual state office, which was both burdensome and time consuming.

On the morning of July 18, 2003, a Friday, when Complainant arrived for work at 9:30 a.m. she had a message from Ms. Johnson's secretary that Ms. Johnson needed a program report for her meeting at 10:00 a.m. that morning. Complainant immediately contacted Ms. Johnson and attempted to explain that without the SERTS system it was not possible to produce a program report in 30 minutes because the information would have to be collected via telephone calls to each of BLM's state offices. Ms. Johnson kept insisting that she needed the report and Complainant responded that she would do her best to provide the information. Complainant submitted a completed report to Ms. Johnson by close of business the following Monday. Ms. Johnson caused Complainant undue stress by placing what Ms. Johnson knew was an unreasonable demand on Complainant. In fact, Ms. Johnson's 11th hour request for the program report was a ruse to obscure her real intent. Ms. Johnson intended to harass Complainant and cause Complainant to suffer emotional distress, because Ms. Johnson knew there was no way Complainant could have produced this report in thirty minutes, and failing so, Complainant was concerned she would appear non-responsive to a direct request by a senior manager. As a result of this incident Complainant suffered a loss of self esteem, a loss of self-confidence, and an inability to sleep.

3. Whether Complainant was discriminated against based on age, gender, harassment, reprisal, and hostile work environment when Ms. Johnson proposed a functional transfer of the National Student Employment Programs (to include the HBCU Team Leader position) from the Washington Headquarters office to the State Level

The first week in June 2003 Ms. Connie Stewart, Complainant's supervisor, at the direction of Ms. Johnson, sent an E-mail to all BLM State offices requesting to know if there was any state office interested in assuming management of the National Student Employment Programs function. This proposal by Ms. Johnson was made without any prior discussion with existing staff or study to determine the efficacy of this decision. Because of the national focus of these programs BLM's Washington headquarters had always administered them. There was not one state office that responded in the affirmative to Ms. Johnson's proposal. However, had a state office agreed to acquire this program function, one result would have been that Complainant would have had to move with the function or risk the loss of her job. Complainant has over thirty years of federal service in the Washington area and has longstanding ties to the Washington community. Had Complainant been directed to move with her program function, as proposed by Ms. Johnson, Complainant's life would have been needlessly disrupted by this forced relocation. Subsequent to this proposal being issued and until it was established that no state office was interested in acquiring this function, Complainant experienced undue

3

stress, anxiety, sleeplessness, and a stress induced skin condition that required medical attention.

4. Whether Complainant was discriminated against based on age, gender, harassment, reprisal, and hostile work environment when Ms. Marilyn Johnson denied Complainant's travel request to travel to the Student Career Experience Program (SCEP) Training and Orientation program in advance of the program start date.

Complainant has been responsible for administering the SCEP Training and Orientation program for the past five years. Complainant took the lead role in developing the training program, continuing to refine course modules, and working with the staff of the BLM Training Center in Arizona to coordinate the successful presentation of the course. As a result the SCEP training has been recognized by the Department of the Interior as an exemplary program and other bureaus and agencies have modeled their training after this course. To ensure quality control of the training program Ms. Arnold's practice has been to arrive three days prior to the start of the training to work with the Training Center staff, who are not as familiar with the program and its requirements. Accordingly, Ms. Arnold submitted her travel request on June 9, 2003, but was informed on June 11, 2003, by Ms. Marilyn Johnson's staff assistant that her request had been denied. Ms. Johnson informed Complainant that she would only approve travel for the Sunday prior to the Monday when the training was to begin. Despite the denial of her request, Complainant traveled on Sunday and worked through the night to ensure all course materials were prepared and ready for the next day. In addition, Complainant fully briefed the former student intern who had been assigned to assist Complainant in the presentation of the course.

The denial of Complainant's travel request by Ms. Johnson was another attempt by Ms. Johnson to sabotage Complainant's program. Given no advance time to prepare, Complainant was extremely concerned that the course would not be well presented, and Ms. Johnson would use that against Complainant. Because of Complainant's extraordinary effort, the training was well received, however, the incident caused Complainant further stress and anxiety.

5. Whether Complainant was discriminated against based on age, gender, harassment, reprisal, and hostile work environment when Ms. Johnson removed Complainant from her position as the Student Employment Program Manager/HBCU Team Leader, replaced Complainant with a lesser qualified younger male and female employee, and reassigned Complainant to a dead-end GS-13 position in a non-existent Title VI program.

Ms. Johnson announced on a Wednesday, July 30 2003, her intent to restructure the Student Employment/HBCU Programs by moving two Denver based employees to Washington headquarters and by reassigning Mr. Michael Brown to the HBCU Team Leader position. On August 1, 2003, Ms. Johnson informed Complainant that she was removing Complainant from the Student Employment Program Manager position and reassigning Complainant to a Title VI EEO specialist position.

4

Mr. Brown, a male who is over ten years younger than Complainant, is a former government contractor, has less than three years of federal service, and no prior experience in the federal HBCU program. Ms. Johnson subsequently reassigned Ms. Connie McGriff into the Student Employment Manager position. Ms. McGriff is over fifteen years younger than Complainant, with approximately fifteen years of federal experience. Ms. McGriff had formerly held the Student Employment Program Manager position and had been removed from this position by the former EEO Manager Ms. Gloria Inniss. Both the HBCU Team Leader position and the Student Employment Program position were classified as career ladder positions (GS-12/14) with full performance at the GS-14 grade level. (see Attachment C and D). Mr. Brown was reassigned at the GS-14 level. Ms. McGriff is currently at the GS-12 level. The Title VI EEO Specialist position that Complainant was reassigned to is classified at the GS-13 full performance level and Complainant is currently at the GS-13 grade level.

Complainant has over thirty years experience in federal EEO programs and over sixteen years specialized experience in student employment programs. Since assuming the HBCU Team Leader function at the GS-13 grade level, Complainant consistently received outstanding performance evaluations from the former AD/HRM Mr. Warren Johnson. In Complainant's last performance evaluation conducted by Mr. Johnson in December 2001, Mr. Johnson stated that Complainant ..."has completed another outstanding year. Her performance has contributed to the Bureau's future work force. She is deserving of promotion to a higher grade." (see Attachment E).

Ms. Johnson's decision to remove Complainant from the Student Employment Program Manager and HBCU Team Leader functions and replace her with a less qualified younger male and female was not only discrimination based on age and gender, but was another retaliatory act in what is an ongoing pattern of reprisal, harassment and hostile work environment. Under Departmental regulations and practice, an employee in a career ladder position is entitled to a promotion to the next higher grade level upon successful performance at the next lower grade level of that position, and a recommendation for a promotion to the next higher level by the employee's supervisor. Complainant has met both of those requirements. Ms. Johnson's action effectively nullified Complainant's opportunity for a promotion to the GS-14 level and Complainant's prior record of outstanding program performance.

Ms. Johnson's action of reassigning Complainant to a Title VI EEO specialist position contravened a directive issued on June 13, 2002 by Mr. J. Michael Trujillo, Deputy Assistant Secretary for Human Resources and Workforce Diversity. This memo stated in pertinent part, "As you may know, we are in the process of reviewing the organizational structure of the Equal Opportunity/Civil Rights Offices throughout the Department. In anticipation if some restructuring in the near future, please do not make any changes to your current Equal Opportunity organization, structure, location, or personnel until we have completed our review and initiated whatever changes to these offices are deemed necessary to improve the efficiency of these very important functional areas." (see Attachment F).

5

Concern over Ms. Johnson's action was also expressed in an E-mail from Ms. Melodee Stith, Departmental Director of Equal Employment Opportunity to Mr. Trujillo stating in pertinent part; ..."It appears that Marilyn [Ms. Johnson] is moving ahead to reassign employees into the EEO office. However, it is my perception that she's not acting responsibly..." "I think that we should ask Marilyn to stop all assignments to the EEO office until she gives us a plan on what she is doing. It appears that she is acting arbitrary and capricious on this..." "the employee [Complainant] that's being assigned to Title VI states that she is not qualified for this position, and feels that she is being set up. Now remember, BLM does not have a Title VII position (or program). Therefore, the position does not exist." (see Attachment G).

This action by Ms. Johnson has caused Complainant severe stress, anxiety, emotional distress, and depression. Due to the symptoms of her depression, (sleeplessness, difficulty concentrating, isolation from family members and friends, and loss of enjoyment) Complainant has been under the care of a therapist. In addition, this action exacerbated the stress induced skin condition Complainant has suffered from during these incidents. Complainant has also been under the care of a dermatologist and internist.

6. Whether Complainant was discriminated against based on age, gender, harassment, reprisal and hostile work environment when she was issued a Letter of Counseling by Ms. Johnson.

At the July 30 meeting after Ms. Johnson announced that Complainant was being removed from the HBCU Team Leader position and replaced by Mr. Michael Brown, Complained exclaimed, "I'll be damned." Ms. Johnson responded by telling Complainant to stop cursing, and Complainant answered by stating she had not cursed, but had used a common expression. On August 1, 2003, Ms. Johnson handed Complainant a Letter of Counseling that stated Complainant had used curse words and caused a hostile environment. Complainant refused to sign that she had received this letter.

For Ms. Johnson, who has on numerous occasions knowingly besmirched the reputation of Complainant by accusing her of committing the federal crime of money laundering, to state Complainant caused a hostile environment by using a common expression is hypocritical at best. Ms. Johnson has a reputation among her peers of using foul and vituperative language during meetings. To accuse Complainant of creating a hostile environment because Complainant used a common expression of surprise makes a mockery of the term "hostile work environment." There was no other employee who indicated they were offended by Complainant's exclamation or considered Complainant's statement in any way hostile.

Complainant has an unblemished federal record and has never been the subject of disciplinary action. If what Complainant did could in any way be construed as a first offense it would have warranted no more than an oral counseling. Ms. Johnson's overreaction to Complainant's benign statement is further indication of Ms. Johnson's

6

real intent. Ms. Johnson's discriminatory and harassing actions against Complainant are calculated and provocative. Ms. Johnson hopes Complainant's frustration will cause her to become insubordinate and thereby justify Ms. Johnson taking disciplinary action against Complainant. However, Complainant has not and will not respond to Ms. Johnson's tactics.

7. Whether Complainant was discriminated against based on age, gender harassment, reprisal and hostile work environment when she was told to move to a smaller shared office space and was not allowed to retain her telephone number, as were other similarly situated employees who had not engaged in protected EEO activities or opposed unlawful discrimination.

On September 3, 2003, a Wednesday, Complainant's co-worker, Ms. Michelle Stroman, acting at the behest of Ms. Johnson, informed Complainant she had two days in which to move to another office. Because of a previously scheduled surgery, Complainant explained she would not be able to move until the following Tuesday. On Tuesday, September 9, 2003, Complainant was informed that she would be sharing a smaller office space with a junior EEO Specialist. Complainant was the only senior EEO specialist required to share an office space. Complainant also requested that she be able to retain her telephone number since she had a large and established network under that number. Ms. Johnson also denied this request. Complainant has been made aware of numerous unsuccessful attempts to reach her by colleagues within and outside of the BLM.

This disparate and harassing treatment by Ms. Johnson is but another action in a well established pattern, and designed to demean and humiliate Complainant. This action has caused Complainant further embarrassment, stress and anxiety.

8. Whether Complainant was discriminated against based on age, gender, harassment, reprisal, and hostile work environment when she was presented with performance standards for the Title VI position that are neither quantifiable nor achievable.

On October 1, 2003, Complainant was presented with performance standards for the Title VI position. Complainant avers that she is not qualified to perform the Title VI position as described in the official position description presented to her by Ms. Johnson. The position description and performance standards are written as though Complainant had been assigned to an existing Title VI position in an existing Title VI program. (see Attachments H and I) Neither is the case. The BLM has never had a Title VI program and there are no existing guidelines, records, or other materials that Complainant can rely upon in attempting to perform in this position.

The reassignment of Complainant to this Title VI heretofore non-existent position is but another example of Ms. Johnson's intent to harass, reprise, and subject Complainant to a hostile work environment by placing Complainant in an impossible situation. This action has further exacerbated Complainant's existing stress related physical and emotional conditions.

7

Remedial Relief

Complainant requests the following relief:

1. Immediate revocation of the reassignment to the Title VI position.

2. Retroactive promotion to a GS-14 EEO Specialist position with back pay effective as of December 6, 2001, to coincide with the performance evaluation and recommendation for promotion by Complainant's former supervisor Mr. Warren Johnson. This action is consistent with Departmental regulations and practice as pertains to career ladder positions. Since Complainant was wrongly reassigned from her career ladder position, and thereby denied a career ladder promotion this action would make Complainant whole.

3. Complainant to receive performance appraisals for years 2002 and 2003 and these appraisals are to be prepared and signed by Complainant's former supervisor Ms. Connie Stewart.

4. Reassignment out of the BLM to an IPA for a period of not less than four years to the National Black Caucus Foundation. All costs associated with the IPA, e.g. travel and training to be borne by the BLM.

5. Restoration of all Complainants' sick and annual leave used in connection with the incidents described in this complaint.

6. Expunction of the Letter of Counseling and Notice of Reassignment to the Title VI position, and any and all other negative materials placed in Complainant's official personnel file, or any other files maintained by Ms. Johnson or her functionaries. Complainant official personnel file, S.F. 50, to reflect her reassigned from the Student Employment Program Manager/HBCU Team Leader position to the IPA position at the Black Caucus Foundation.

7. Pecuniary compensatory damages to cover actual medical expenses related to the incidents described in this Complaint.

8. Non-pecuniary damages in the amount of $300,000 for the past and future emotional distress, anxiety, depression, and psychic damage the Complainant has and will continue to suffer.

9. All attorneys' fees.

10. A cease and desist order against Ms. Johnson to prevent her from making any further untrue accusations against Complainant.

*Ronella Arnold*
10-16-03

8



# United States Department of the Interior

U.S. GEOLOGICAL SURVEY
Reston, Virginia 20192

## DESIGNATION OF REPRESENTATIVE

This form constitutes my decision regarding representation in all matters pertaining to my complaint of discrimination filed with the Department of the Interior, U.S. Geological Survey on _August 6, 2003, EEO Counselor_

I understand that if I designate a representative that I can terminate the authority and responsibilities granted to that person at any time. Should this occur, I will provide written notification to the Equal Employment Opportunity Officer, U.S. Geological Survey, 602 National Center, 12201 Sunrise Valley Drive, Reston, Virginia 20192.

**Check one:**

[ ]   I am not designating a representative at this time. If, at a later date, I choose to have someone represent me, I will provide written notification to the Equal Employment Opportunity Officer, at above address.

[ ]   I designate _____ to act as my representative. I understand all official correspondence will be sent to me and a copy to my representative unless I state otherwise.

[X]   I designate my attorneys _Roy J. Bucholtz_ and _Sandra McCrary_ as my representatives. I understand all documents and decisions will be sent to him/her, and to me. I also understand the timeframes for receipt of materials by me will be computed from the time of receipt by my attorney.

Representative's address: _Roy J. Bucholtz_       _Sandra McCrary_
_Bucholtz & Culbertson, P.C._       _9907 Chase____ Ct_
_1801 Reston Parkway (Suite 302)_    _Vienna VA 22182_

Representative's telephone number: _703-471-9660_    _703-438-0936_
_FAX 703-471-5059_

Although the person named above may act for me in all matters pertaining to the discrimination complaint, I understand that I must personally sign all critical EEO related documentation (i.e., Notice of Final Interview, Complaint Withdrawal form, Settlement Agreement).

_[signature]_     _10-8-2003_
Signature of Aggrieved Person    Date

_[signature]_     _Oct 8, 2003_

_[signature]_     _10/8/03_
Signature of Representative    Date