**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ROMELLA J. ARNOLD
Plaintiff,
v.

GALE NORTON, DEPARTMENT OF THE INTERIOR,

Defendant.

Civil Action No. 05-CV-01475 (RWR)

**DEFENDANT'S REPLY**

Defendant respectfully submits this reply to plaintiff's opposition to defendant's motion for summary judgment.

It is well settled in this Circuit that when a plaintiff files an opposition addressing only certain arguments raised by the defendant, "a court may treat those arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., General Bd. Of Global Ministries*, 238 F.Supp.2d 174, 178 (D.D.C. 2002) (*citing FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997); *see also* Local Rule LCvR 7(b); *Bancouldt v. McNamara*, 227 F.Supp.2d 144, 149 (D.D.C. 2002)("[I]f the opposing party files a responsive memorandum, but fails to address certain arguments made by the moving party, the court may treat those arguments as conceded, even when the result is dismissal of the entire case.") (citations omitted); *Bramwell v. Blakey,* 2006 WL 1442655, *8 (D.D.C.2006)("The FAA contended in its motion for summary judgment that it did provide job training, job coaching, and "single tasked" or "structured" assignments, and that in some instances it offered such services but Ms. Bramwell declined to accept them. Ms.

Bramwell did not address this issue in her response to the motion for summary judgment.* * * Thus, the Court treats this issue as conceded"); *Hornbeck Offshore Transp., LLC v. U.S. Coast Guard,* 2006 WL 696053, *23 (D.D.C.2006)("While Plaintiff states that it has not waived its appeal with regard to FOIA Exemption 6 in its "Opposition to Defendants' Statement of Material Facts Not in Dispute . . .it fails to address the Agency's specific arguments as to Exemption 6 in its actual Cross-Motion for Summary Judgment and Opposition. Moreover, Plaintiff never explains in any filing why the redaction of the names of junior Coast Guard personnel. . .was improper. Plaintiff never justifies its objection. Accordingly, the Court construes Plaintiff's failure to respond as a concession that the Agency's arguments on this issue are meritorious; as such, the Court grants Defendant's Motion for Summary Judgment with respect to its FOIA Exemption 6 withholdings."); *Hooker-Robinson v. Rice,* 2006 WL 508343, *3 (D.D.C. 2006)("Because the plaintiff only addressed some of the defendant's challenges in her response, the Court will consider those challenges not addressed by the plaintiff in her response as conceded."); *Matta v. Snow*, 2005 WL 3454334, *23 (D.D.C.2005)("Accordingly, the Court shall grant Defendant's Motion for Summary Judgment as it applies to Plaintiff's "participation claim," as Plaintiff has failed to cite to any material fact supporting his allegation and has failed to respond to the arguments made in Defendant's Motion for Summary Judgment").

Defendant argued that the plaintiff failed to establish that the alleged accusations of money laundering were either adverse employment actions, or material adverse actions and thus failed to establish an essential element of her claims of discrimination and retaliation. SJM at p. 22-23. Plaintiff did not dispute or address this argument, and thus has conceded that she failed to establish an essential element as to the discrimination and retaliation claims pertaining to

alleged money laundering accusations.

Defendant also argued that plaintiff had not established that race, sex, age or reprisal was the reason for Ms. Johnson's actions. Plaintiff had testified that she believed the reason for Ms. Johnson's actions was a agenda to destroy the HBCU program. *See, e.g.* Arnold 2004 Inv. Interview at p. 18-19, 34-36. Defendant argued that not being supportive of the HBCU Program and wanting to dismantle it, and/or disagreement concerning the appropriateness of different types of set asides or special accommodation programs, is not evidence of discrimination or retaliation against plaintiff. SJM at p. 23-24. Plaintiff did not address or dispute this argument, and thus, conceded it.

Plaintiff did not deny or address, and therefore conceded that the termination of the BLM agreement with Langston was not a material adverse action or a material adverse employment action. SJM at p. 24.

Plaintiff also did not address or deny plaintiff's argument that sending an e-mail to someone other than plaintiff, concerning a proposal to transfer the program to a state office, which proposal was never implemented, was neither a material adverse employment action nor a materially adverse action for purposes of a retaliation claim. SJM at p. 24-25. Rather plaintiff states that it should "count as harassment;" by this statement, defendant presumes plaintiff to be arguing that the act should be considered as a part of a hostile work environment claim. However, all plaintiff states is that when she found out about the proposal she suffered "stress, anxiety and harm at the thought of having to choose between" leaving her job or relocating. Response at p. 37. Plaintiff's speculations about options concerning a proposal which was never implemented does not transform the action of seeking input on a proposal a material

adverse action or a material adverse employment action. Purely psychic injuries do not qualify as adverse actions for purposes of federal anti-discrimination statutes. *Totten v. Norton*, 421 F. Supp 2d 115, 120-121 (D.D.C. 2006) ("Not everything that makes an employee unhappy is an actionable adverse action.')(citing *Rochon*, 438 F. 3d at 1219). Further, since "interlocutory or mediate decisions having no immediate effect upon employment are not deemed adverse employment actions, *see Russell v. Principi*, 257 F.3d F.3d 815, 818 (D.C.Cir. 2001), it is indeed a stretch that management's action in merely seeking to explore an option, through correspondence not directed to plaintiff, is a material adverse action against plaintiff.

Plaintiff similarly addressed defendant's argument concerning the deletion of the SERTS program and a request that plaintiff submit a report to Ms. Johnson SJM at p. 25-26. Plaintiff did not deny defendant's argument that the discrete actions were not material adverse actions or materially adverse employment actions. SMF at p. 25-26. Rather, plaintiff states that the decision to terminate the SERTs system resulted in plaintiff having to manually collect data on a national program and was part of a "continuous pattern of harassment and intimidation." However, the only evidence in the record showing that plaintiff had to manually collect data, pertains solely to one occasion when plaintiff was asked to collect data on July, 18, 2003. Arnold 2007 Depo at p. 46-47. When plaintiff told Ms. Johnson she could not get the data to her by 10:00, "She [Ms. Johnson] said get it to me when you can." *Id.* The manual collection involved the far from arduous task of calling 14 field managers. *Id.* The report was a one page list identifying six individuals. *Id.* at p. 71-74 and at Ex. 3. Plaintiff has offered no evidence of any admonishment or even a complaint from Ms. Johnson concerning the matter. By any objective standard, the facts simply show no material adverse action and no harassment.

Plaintiff failed to address or deny defendant's argument that the denial of her request to travel to Phoenix early was not a material adverse action . SJM at p. 26. Thus, plaintiff concedes that she fails to establish a prima facie case of discrimination or retaliation on the travel issue.

Plaintiff also failed to address or deny defendant's arguments that neither giving her performance standards, placing her in her new office space, nor giving her a new telephone number were material adverse actions. SJM at p. 37-38. Therefore she has conceded that she has not established an essential element of these claims.

Defendant argued that plaintiff cannot establish a causal connection by close temporal proximity between the alleged protected activity which she had identified and alleged acts of retaliation. SJM at p. 20-21. Plaintiff did not dispute or address this argument, and thus has conceded it. [1]

Lacking a close temporal connection to the alleged protected activity, and lacking direct evidence of discrimination or retaliation, plaintiff attempts to raise an inference of retaliation by stating in her Opposition that "Ms Marilyn Johnson has a reputation as being anti-affirmative employment programs and for engaging in retaliatory activities against EEO and affirmative employment advocates." Opposition at p. 7.

---

[1] Although plaintiff offered no argument or law on the issue, in her Opposition, plaintiff suggested, for the first time, in her statement of facts that her "defense" of the Langston grant program falls under the opposition clause. See Opposition at p. 9. This was not identified as alleged protected activity in plaintiff's response to defendant's Interrogatories. *See* ARogs at numbers 6 and 9. Ms. Johnson's questioning of the agreement with Langston and even the ultimate decision to discontinue the agreement, are not "unlawful employment practices" as defined in Title VII. *See* 42 U.S.C. §§ 2000e-2(a)(1) & 2000e-3. Therefore, plaintiff's "opposition" to the questioning of the Langston agreement can not serve as the basis for an opposition clause claim of retaliation. *King v. Jackson,* 487 F.3d 970, 972 -973 (D.C.Cir. 2007).

First, as plaintiff has conceded, allegedly being against anti-affirmative action programs is not evidence of discriminatory or retaliatory intent against plaintiff. Second, plaintiff's "opposition" to the questioning of the Langston agreement can not serve as the basis for an opposition clause claim of retaliation. *See* fn 1. Third, plaintiff has not submitted any evidence – specific facts– that Ms. Johnson engaged in retaliatory activities against employees for participation in protected activity.

> Once a moving party fulfills its obligations pursuant to 56(c), the onus is on the non-moving party to respond with "specific facts" to establish a genuine issue for trial. *Celotex*, 477 U.S. at 324. . . . Subsection (e) of Rule 56 sets forth the extent to and means by which the non-moving party shall make the necessary evidentiary showing in order to survive a properly supported motion for summary judgment. . . . In italics the Court notes four areas in which Benn's opposition to Unisys' motion for summary judgment is deficient. First, the only Rule 56(e) evidence attempting to set forth "specific facts" in dispute is an affidavit affirmed by plaintiff's counsel, James G. Gore, Jr., who does not have personal knowledge of the events alleged in Benn's complaint. Second and third, plaintiff's counsel cannot testify at trial as to the events he affirms in his affidavit as it would [be] inadmissable hearsay. "The affidavit must be based on personal knowledge and not on the hearsay statement of another purported witness." *Hack v. H.V.R. Parts, Inc*., 742 F.Supp. 283, 286 (W.D.Pa.1990). Finally, Benn has produced literally absolutely no evidence--only allegations--in support of his opposition to the summary judgment motion. *See Farrell v. Potomac Electric Power Co.*, 616 F.Supp. 995, 1000 (D.D.C.1985)("All the plaintiff has done is to make additional allegations, but as Rule 56(e) clearly provides, such allegations are not enough and do not raise a factual issue."). * * * Benn must "go beyond the pleadings and by [his] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex*, 477 U.S. at 324 . . .(quoting Fed.R.Civ. P. 56(e)).

*Benn v. Unisys Corp*., 176 F.R.D.at 4 -5.

> A court may strike all improper portions of an affidavit used to support or oppose a motion for summary judgment. Fed.R.Civ.P. 56(e). Under Federal Rule of Civil Procedure 56(e), when affidavits are used to support or oppose a summary judgment motion, they "**shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein**."

*Canady v. Erbe Elektromedizin GmbH*, 384 F.Supp.2d 176, 180 (D.D.C.2005).

Plaintiff alleges at page 5 of her Opposition, without proof, that from 1994 to 1996, Ms. Johnson was named in numerous complaints for taking retaliatory actions against African Americans. Opp at p. 5. Being named in a complaint is not evidence of discriminatory or retaliatory intent. In support of her assertion plaintiff cites to the following:

1. "Exhibit 6, Lee Allen Statement p. 2-4". There is no assertion in the cited material that Ms. Johnson retaliated against Mr. Allen for involvement in any protected activity or that he made such a claim to the EEO. The cited material pertains to an alleged disagreement in 1990/1991 between Mr. Allen and Ms. Johnson concerning Mr. Allen's program recommendations concerning a mentoring program in which he claims that Ms. Johnson made "embarrassing and humiliating comments about my program responsibilities." Allen Dec. at p. 2 ¶ 3. This conversation occurred some 2-3 years before Mr. Allen's first EEO complaint which was filed in 1993, and thus cannot be an act of retaliation for protected activity. See *Id.* at ¶ 1.

Mr. Allen's conclusionary opinions concerning Ms. Johnson's motivation for taking various actions concerning plaintiff and others are inadmissible. The record in this case reflects that Mr. Allen has no first hand knowledge of the occurrences at issue in this case, and he does not claim first hand knowledge of the various actions concerning others in his affidavit. Mr. Allen's opinions are merely conclusionary allegations of a third party, and just like plaintiff's conclusionary allegations, are not sufficient to meet the requirements of Rule 56(e). For example, Mr. Allen states: "As the AD-HRM Ms. Johnson has strategically ignored the pleas of African Americans to even attempt to address [their] concerns." *Id* at p. 4. As factual support of this statement of his belief, Mr. Allen offers the non sequitur that Ms. Johnson failed to respond

to letters written to President Clinton and to Mike Dombeck, the Director of BLM. *Id.* Mr. Allen's affidavit also contains clearly inadmissible hearsay about conversations between third parties.

2. Ex 13, Ed Weathersby Statement : There is no assertion by Mr. Weathersby that Ms. Johnson retaliated against him or that he filed a claim of retaliation concerning Ms. Johnson. There is simply a statement that a settlement agreement was entered into concerning a claim of discrimination based on race, age and sex. *See Id.* at ¶2-4. There is no factual explication of what Ms. Johnson allegedly did. Mr. Weathersby only submits the conclusionary allegation that "Ms. Johnson was an official who discriminated against me. Ms. Johnson signed my settlement agreement." *Id. at ¶4.*

3. Ex 10, Richard Redmond Statement at p. 4-5. Again, the cited pages contain no evidence that a complaint had been filed against Ms. Johnson for retaliation for protected activity. Paragraphs 7-12 contain conclusionary statements of the affiant's opinion and unsupported, inadmissible hearsay, none of which proves that complaints were filed that alleged that Ms. Johnson retaliated against employees for engaging in protected activity. Indeed in paragraph 1 of the affidavit where Mr. Redmond states that in 1998 and 2000 he filed claims of discrimination and reprisal against the BLM, Ms. Johnson is not one of the alleged officials identified. Mr. Redmond names only Warren Johnson and Michelle Stroman. Opposition Ex. 10 at ¶1. In paragraph 3, plaintiff also does not name Ms. Johnson as one of his supervisors or as a person directly involved in his alleged constructive discharge.

4. Ex 5 Warren Johnson statement at p. 6 that "under Ms.Johnson's tenure the student employment programs were not very productive nor cost effective," has nothing to do with

retaliation.

At p. 7 of her opposition plaintiff offers the following additional citations:

6. Ex 11, Ivy Garcia Statement at p. 2. At p. 2 ¶10. Ms. Garcia does not claim that plaintiff retaliated against her nor does she claim first hand knowledge of any acts of retaliation.

7. Ex 12, Clark Collins p 1-2. Mr. Collins' affidavit offers only conclusionary statements that "Ms. Johnson's history is that she eliminates projects and people, to the detriment of BLM and African Americans" and conclusionary statements about why the SERTS system was dropped. His statement offers no evidence that Ms. Johnson retaliated against employees for involvement in protected activity.

Thus, plaintiff has not submitted evidence sufficient under Rule 56 to raise an inference of retaliatory motive on the part of Ms. Johnson for any of her claims.

**"NSEEP/HBCU Manager"**

Plaintiff argues that her lateral reassignment left her with significantly diminished responsibilities compared to her duties in the alleged position "NSEEP/HBCU Program Manager," a position with an alleged career ladder to GS-14. Opposition at p. 18, 20-21.

However, plaintiff has failed to raise a genuine issue of material fact that at the time of her reassignment she was officially in such a position. In defendant's Interrogatory #7 plaintiff was asked to fully describe any official promotion to a position at the GS-14 level or with promotion potential to the GS-14 level, including when such a promotion was received and whether it was a temporary promotion. The only such official promotion plaintiff identified was her 120-day temporary promotion as HBCU coordinator. ARogs at response #7. Concerning her accretion of duties promotion as SCEP manager, plaintiff conceded that "After six months of

highly successful performance and increased responsibilities Arnold was given an accretion of duties promotion **to the GS- 13 level**." Plaintiff's response to Defendant's SMF (SMF Response) at ¶5. (Emphasis added). Plaintiff does not dispute that a promotion through an accretion of duties cannot be to a career ladder position. *See Id.* at ¶6, and defendant's SMF at ¶6. ("B. Competitive procedures do not apply to the following actions . . . (3) A promotion resulting from an employee's position being classified at a higher grade (**with no further promotion potential**) because of additional duties and responsibilities, commonly known as accretion of duties." 370 DM 335.)(emphasis added). Thus the evidence of record demonstrates that plaintiff was not, and could not have been placed into a career ladder position by an accretion of duties promotion. *See* September 20, 2007 Declaration of Philesa Spencer at p. 1, second paragraph.

Plaintiff does not dispute that in 2001 she received only a 120-day temporary promotion to the GS-14 level in the position HBCU program manager. Response at ¶ 8. Plaintiff has offered no personnel action, no affidavit from her former supervisor or from a personnel specialist, or other competent evidence showing that she was ever placed into a career ladder position, GS 13/14 with the title NSEEP/HBCU Program Manager. The evidence in the record clearly shows that plaintiff was in the GS-13 position of SCEP Program Manager at the time of her reassignment. SJM Ex. D2b.

Plaintiff alleged that "The NSEEP/HBCU Manager position had a career ladder to the GS-14 level, thereby providing Arnold, a GS-13, promotion potential to the next highest grade." Response at p. 20-21. She cites to Opposition Ex. 2, page 29. Plaintiff alleges that this document was BLM's "Table of Organization and Classification issued in 2001 during the tenure

of the then Director, BLM Kathleen Clark" (Table)(Exhibit 2, page 29). The document does not indicate that plaintiff's position was NSEEP/HBCU manager. *Id.* It identifies plaintiff's position as SCEP manager but incorrectly reflects it as having a full performance level as GS-14. *Id.* Defendant does not dispute that the alleged table of organization reflects GS 14 as the full performance level of the SCEP position. However, the affidavit of the specialist who actually classified plaintiff's position, 370 DM 335-- discussed above–, and plaintiff's official personnel file establish that the document reflecting that Ms. Arnold's SCEP position had promotion potential to the GS-14 level is incorrect. *See* September 20, 2007 Declaration of Philesa Spencer (Spencer Dec), attached hereto, at p. 1, second and third paragraphs. *See* Dahlena Johnson Dec. (plaintiff's personnel file does not reflect that she was ever promoted to a career ladder 13/14 position. It only reflects a temporary promotion to HBCU Coordinator.)

Ms. Spencer explained the source for the discrepancy in the table. Effective July 16, 2001, plaintiff received a temporary promotion to HBCU Coordinator, GS-14 for 120 days. Spencer Dec at p. 1, 4th paragraph. In order to effectuate the temporary promotion, plaintiff's full performance level in the FPPS was changed to a GS-14. *Id.* When the temporary promotion ended on November 11, 2001, and plaintiff was returned to her GS-13 SCEP Program Manager position of record, the full performance level of GS-14 was not changed back to reflect the full performance level of the SCEP position. *Id* at p 1-2. The FPPS printouts show plaintiff's full performance level prior to the temporary promotion to be GS-13. *Id* at p. 2 and at attachments A and B. Attachment A shows that on March 14, 1999 the position title was SCEP Program Manager, the grade was 13 and the full performance level was 13. *Id.* On January 14, 2001, the grade was 13 and the full performance level was 13. *Id* at Attachment B. On July 16, 2001, the

title is changed to HBCU Coordinator and both the grade and full performance level were changed to 14. *Id.* at Attachment C. On November 17, 2001, the position title was changed back to SCEP Program Manager and the grade to 13, but the full performance level was not changed back to the level 13. *Id.* at attachment D. This was an error. *Id* at p. 2. Plaintiff has submitted no evidence from anyone attesting to the correctness of the Table entry. Plaintiff has submitted no evidence that she has ever been officially promoted to a 13/14 career ladder position.

The evidence of record shows that after 2001 and at the time of her reassignment, plaintiff may have been informally acting as HBCU Coordinator without promotion to the GS-14 grade, but that her official position was SCEP Program manager which was a GS-13. The record shows that plaintiff had not been placed in any position NSEEP/HBCU Manager which was a 13/14 career ladder position. Thus, plaintiff has failed to establish the basic premise of her claim.

Removal of duties, such as acting team leader, which plaintiff engaged in as informal acting HBCU Coordinator[2], is not a material adverse action. This Circuit has held that denial of temporary acting designations is not an adverse employment action. *Stewart v. Evans,* 275 F.3d 1126, 1135 (D.C. Cir.2002). Plaintiff's situation is distinguishable from the Acting Sergeant position in *Elam v. D.C. Fire and EMS Department*, 2005 WL 1903557, *5-6 (D.D.C.2005) because informally acting as HBCU coordinator did not increase plaintiff's salary and benefits and did not give her supervisory responsibilities. Opposition Ex. 7 at second page (Position Description at box 11)(HBCU position was neither supervisory nor managerial).

---

[2] Plaintiff admits at p. 34-35 of her Opposition that the "team leader NSEEP/HCBU function had formerly been held by Mr. William Nunn after Mr. Nunn died the Team Leader function had been rotated between Ms. Arnold and [Mr. Shafran]. . . ."

To the extent plaintiff alleges that an inference of discrimination can be drawn because Mr. Brown "replaced" her in a GS-14 NSEEP/HBCU position, plaintiff's proof fails because she has not offered evidence that she was in a GS-14 NSEEP/HBCU position.

Further, she has not offered evidence that Mr. Brown was placed into the alleged NSEEP/HCBU position when he laterally transferred into BLM. The position into which he transferred was a supervisory position. Opposition Ex. 52.

Plaintiff also cannot create an inference of discrimination because Mr. Brown was laterally transferred into the new supervisory GS-14 position, because plaintiff was not similarly situated to Mr. Brown. Mr. Brown was a GS-14 at the time of the lateral assignment and she was not. Id A lateral transfer is not a promotion and competition is not required for a lateral transfer. Dahlena Johnson Dec at ¶ 7.

Unlike the alleged NSEEP/HBCU position, plaintiff has not argued that laterally transferring her from the position which she actually occupied, GS-13 SCEP, to the Title VI position was a material adverse action. *See generally* Opposition at p. 18-23. As is indicated above, the SCEP position was not a career ladder position and did not have any greater promotion potential than the GS-13 Title VI position.

More importantly, plaintiff did not address or deny defendant's argument, and thus conceded defendant's argument, that plaintiff can establish no material adverse effect on her because she never did the Title VI job and was given a detail to another position as she requested. SJM at p. 33-35. No one has a vested right to any particular job position

> a plaintiff who is made to undertake . . . a lateral transfer-that is, one in which she suffers no diminution in pay or benefits-does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms,

> conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm. Mere idiosyncracies of personal preference are not sufficient to state an injury. *See, e.g., DiIenno v. Goodwill Indus*., 162 F.3d 235, 236 (3d Cir.1998); *Doe,* 145 F.3d at 1448 (finding "no case, in [the 11th] or any other circuit, in which a court explicitly relied on the subjective preferences of a plaintiff to hold that plaintiff had suffered an adverse employment action"); *Smart v. Ball State Univ*., 89 F.3d 437, 441 (7th Cir.1996) (emphasizing that "not everything that makes an employee unhappy is an actionable adverse action").

*Brown v. Brody*, 199 F.3d 446, 457 (D.C.Cir. 1999); *accord Burlington Northern and Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405 (2006):

> To be sure, reassignment of job duties is not automatically actionable. Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and "should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.' " *Oncale*, 523 U.S., at 81, 118 S.Ct. 998.

*Burlington*, 126 S.Ct. at 2417. The plaintiff in *Burlington* offered evidence that she actually was moved into an objectively worse position; she was not given any options. But in this case, Ms. Arnold decided that she did not want to undertake the lateral transfer to the Title VI position, and the defendant did not force her to do the Title VI job. Plaintiff relates that the following occurred on October 1, 2003, when she got her performance standards from Michelle Stroman:

> At that meeting I said, Michelle, this further supports that there is no Title VI program. So, what am I expected to do? She said, Romella, we want you to build a program. I said, hell, I built the one I was in. I said, what incentive would I have to build a program, with Marilyn's premise she can just take me out of it because she has the prerogative and then put someone else in it and pay them more money. I don't think so. . . . ."

Ex. D2 at p. 99-100. Plaintiff's Opposition does not deny that she never did any Title VI work, that she went on leave for an extended period and then came back in late December, 2003 and requested a detail. Arnold 2007 Depo. at p. 36-41. The plaintiff did not ask higher level

management to return her to the SCEP position. Instead, she testified that she went to the deputy director "for intervention to get away from Marilyn Johnson." Opposition Ex 20, Arnold 2005 Depo at p. 85:15-23. Her contact with the deputy director was set up by Mike Trujillo. *Id.* at p. 86. There was a telephone meeting in which plaintiff discussed the alleged

> hostile work environment and how it was affecting my health mentally and physically, and that I needed to get out of the office because I was afraid that Marilyn was setting me up to terminate my employment of 30-plus years.
>
> Q. What was their response to your statements?
>
> A. Very positive.
>
> Q. What did they say?
>
> A. Trujillo told Fran he would follow up after that phone call. . . .The next call I got was from a personnel officer in Montana. Diane Freez contacted me and said she was contacting me for Fran Cherry to get an idea or feel for what I wanted to do; you know my background, if I was willing to relocate to the field.
>
> You know she was doing an exploratory inquiry. Then she said she'd get back to me, and she did.
>
> I gave them some options. At that initial meeting that I had with Trujillo and Fran, I gave then options in terms of what I wanted to do, in terms of a detail assignment.
>
> Q. How did it come about that these doctor's letters were submitted to Mr. Trujillo?
>
> A. I requested those doctor's letters to support me having to get out of that office. I requested them.
>
> Q. Then as a result of that meeting, you were moved in February 2004 to another office
>
> A. Yes.

*Id*. at p. 86-88.

Plaintiff specifically asked that she not work under Marilyn Johnson and presented

doctor's letters to support her request to be moved out of the office. The defendant moved plaintiff as she requested.[3] Plaintiff was not forced by the defendant to do the Title VI work which she alleges was so undesirable. Therefore, she has not shown that she suffered any objective harm by being forced to do the purportedly undesirable Title VI job. Plaintiff has not presented any evidence concerning the detail which she actually went on or the duties and responsibilities which she actually had to undertake. Unlike the plaintiffs in *Czekalski* and *Bryant* referred to at p. 4 of plaintiff's Opposition, plaintiff has presented no evidence of any materially adverse consequences pertaining to the position and duties which she actually had on the detail.

That plaintiff may have preferred the SCEP position is not dispositive. To sustain a claim of discrimination/retaliation on the part of the defendant -- which is the Secretary of the Department of Interior, and not Ms. Johnson -- plaintiff must show that she **objectively** suffered a material adverse action through actions of her employer. In this case the Department's higher level managers did not force plaintiff to do the Title VI job. Plaintiff has not offered any evidence that in the position in which she actually worked she suffered a significant diminishment of material responsibilities. She has not established a "de/skilling" or increase in inferior work, or lack of work. *Dahm v. Flynn*, 60 F.3d 253, 255 & 257 (7th Cir. 1994). There was no removal of supervisory duties as in *Stewart v. Ashcroft*, 352 F.3d 422, 427 (D.C.Cir 2003). Thus, plaintiff has failed to establish an essential element of her claim of discrimination

[3] Since plaintiff specifically told upper management that she could not work under Ms. Johnson because the "hostile work environment was adversely affecting her physical and mental health, plaintiff cannot claim a materially adverse action in being placed in a position which did not report to Ms. Johnson.

or retaliation concerning her removal from the SCEP position. By not addressing or denying defendant's argument, see SJM at p. 30-35, plaintiff has conceded that there was no objective harm to plaintiff since she never did the Title VI job and received a transfer as requested by her.

Plaintiff contends that the letter of counseling was an adverse employment action because it was issued at the time she was notified she was being removed from the SCEP position. Plaintiff has not established that her removal was a material adverse action, and she has not established any other harm to her from the issuance of the letter of warning. Thus, she has not established a material adverse action as to the issuance of the letter of counseling/warning.

**Hostile Work Environment/Harassment**

Plaintiff contends at pages 28-30 of her Opposition that she was subjected to a retaliatory hostile work environment. Plaintiff contends that Ms. Johnson engaged in "retaliatory harassment." However, plaintiff does not deny that during the period in question she only spoke with Ms. Johnson about eight times, and that Ms. Johnson never made any derogatory comments to her concerning her age, sex, race, or her protected activity. See SJM at p. 39-40 All plaintiff points to as evidencing discriminatory animus is Ms. Johnson's use of the term money laundering concerning the Langston agreement. ARogs at p. 23-24, Interrogatory 10. This is certainly not a comment on a protected category, a protected activity or evidence of discriminatory animus. The other acts complained about, such as the removal of SERTs, asking for a report, consideration of the lead state concept and the decision to end the relationship with Langston were business decisions having no effect on the terms and conditions of plaintiff's employment. She has not submitted evidence of acts so sufficiently severe or pervasive as to alter the terms and conditions of plaintiff's workplace. The evidence in the record does not meet the demanding standard

required to sustain a prima facie case of hostile work environment. Plaintiff has failed to submit evidence of an essential element of this claim and has failed to establish a prima facie case of hostile work environment.

**Failure to Exhaust Administrative Remedies.**

Plaintiff does not deny that she failed to timely contact an EEO counselor for each discrete act which occurred 45 days before August 8, 2003. That is, the first two allegations concerning money laundering, the instruction to delete the SERTS system, and the e-mail concerning the lead state concept. Rather, plaintiff argues that they were part of a continuing violation. Defendant does not contend that the actions may not properly be considered as part of a hostile work environment claim. But the continuing violation theory no longer is applicable to circumvent exhaustion requirements as to allegations of discrete acts of discrimination or retaliation. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

**CONCLUSION**

The plaintiff has failed to establish an essential element of each of her claims of discrimination, retaliation and hostile work environment. She has failed to raise an issue of material fact as to the missing essential element of each claim, which has been shown by the defendant. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial[,] [and] [t]he moving party is 'entitled to judgment as a matter of law.'" *Celotex Corp.*, 477 U.S. at 323. Therefore, defendant's motion for summary judgment should be granted.

Respectfully Submitted,

/s/
JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

/s/
RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney

/s/
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C. 20530
202/514/6970